```
          UNITED STATES DISTRICT COURT FOR THE
             SOUTHERN DISTRICT OF WEST VIRGINIA
                         CHARLESTON
```

**UNITED STATES OF AMERICA,**

        Plaintiff,

v.                                    CIVIL ACTION NO. 2:11-0101

$27,671.50, MORE OR LESS,
IN UNITED STATES CURRENCY,

        Defendant.

(Katherine Anne Hoover, and
 John F. Tomasic;
 No pending federal criminal charges)

### VERIFIED COMPLAINT OF FORFEITURE

    Comes now the United States of America, by and through its attorneys, R. Booth Goodwin II, United States Attorney for the Southern District of West Virginia, and Betty A. Pullin, Assistant United States Attorney for the Southern District of West Virginia, and respectfully states as follows:

### NATURE OF THE ACTION

    1.  This is a civil action <u>in</u> <u>rem</u> brought on behalf of the United States of America, pursuant to 18 U.S.C. § 983(a), to enforce the provisions of 21 U.S.C. § 881(a)(6) for the forfeiture of a sum of money furnished or intended to be furnished in exchange for a controlled substance, or constituting proceeds traceable to such an exchange, or which was used or intended to be used to

facilitate one or more controlled substance violations, 21 U.S.C. §§ 801 et seq.

## THE DEFENDANTS IN REM AND POTENTIAL INTERESTED PARTIES

2. The defendant property consists of $27,671.50, more or less, in United States currency (CATS No. 10-FBI-002594), representing the balance of WesBanco Bank Passbook Savings Account No. XXXXXX3002, in the names of "Dr. Katherine A. Hoover or John F. Tomasic," which was seized pursuant to a federal seizure warrant executed on or about March 2, 2010.

3. The currency identified in paragraph 2 above is presently in the custody of the United States Marshals Service for the Southern District of West Virginia, reference CATS No. 10-FBI-002594.

## JURISDICTION AND VENUE

4. Plaintiff, United States of America, brings this action in rem in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. This Court has in rem jurisdiction over the defendant property pursuant to 28 U.S.C. 1355(b) since the acts giving rise to forfeiture occurred in this district.

6. Upon the filing of this verified complaint, the plaintiff requests that the Clerk of this Court issue an arrest warrant in

<u>rem</u> pursuant to Supplemental Rule G(3)(b)(i), which the plaintiff will have executed upon the defendant property, pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district and, pursuant to 28 U.S.C. § 1395(b), because the property is located in this district.

**FACTUAL BASIS FOR FORFEITURE**

8. The facts giving rise to the forfeitability of the defendant currency are as follows:

(A) From at least 2004 until approximately January 2006, a medical clinic known as the "Williamson Wellness Center" operated at 35 West Third Avenue, Williamson, Mingo County, West Virginia. During this time, the clinic was allegedly owned by William F. Ryckman, M.D. of Sutersville, Pennsylvania, and employed several physicians and medical staff.

(B) In approximately January 2006, the Williamson Wellness Center's name changed to "Mountain Medical Care Center, LLC." The alleged new owner of the clinic was Camille Helsel, one of the clinic's nurse practitioners. Although the clinic's name changed, it continued operating at the same location, with primarily the same staff and in virtually the same manner as it had when it was known as the Williamson Wellness Center.

(C) In or about February 2009, ownership of the clinic abruptly returned to William F. Ryckman, M.D., however, it continued its same operations at the same location and with primarily the same staff through and including March 2010.

(D) At all times referenced in paragraphs 9(A) through (C) above, Dr. Katherine A. Hoover and other physicians were employed by the clinic and were licensed to practice medicine in the State of West Virginia.

(E) At all times referenced in paragraphs 9(A) through (C) above, Dr. Katherine A. Hoover and other physicians employed by the clinic possessed valid DEA Registrations in the State of West Virginia and were authorized to prescribe controlled substances. The address indicated in DEA records as their location of registration was 35 West Third Avenue, Williamson, West Virginia, which was also the clinic's address.

(F) On or about March 2, 2010, and during the course of an extensive and ongoing investigation by various federal and state law enforcement agencies into the unlawful prescription practices of the clinic's physicians and staff, federal search warrants were executed on the clinic and other locations in Southern West Virginia, Eastern Kentucky and Western Pennsylvania. A federal seizure warrant authorizing the seizure of up to $4.6 million was also executed on all proceeds on deposit in two specified accounts belonging to Dr. Hoover at WesBanco Bank. The sum of $27,671.50, more or less, was

seized from Hoover's passbook savings account number XXXXXX3002 at WesBanco Bank, pursuant to the seizure warrant.

(G) The investigation has revealed that Dr. Katherine A. Hoover, and employees and other physicians of the clinic, conspired with each other in unlawfully obtaining and distributing hydrocodone and alprazalom, schedule III and IV controlled substances, outside the usual course of professional practice, and did in fact distribute and cause to be distributed such controlled substances outside the usual course of professional practice from 2006 to 2010 to patients of the clinic, in violation of 21 U.S.C. §§ 841(a)(1), 846. Hoover, and employees and other physicians of the clinic, also conspired with each other to misuse, and did in fact misuse, one or more DEA registration numbers issued to others to distribute controlled substances, in violation of 21 U.S.C. §§ 843(a)(2), 846.

(H) A physician who wishes to possess, distribute, dispense, or prescribe controlled substances as part of his or her professional practice must do so pursuant to a DEA registration (21 U.S.C. § 822; 21 C.F.R. § 1301.11). A prescription for a controlled substance must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his or her professional practice. 21 C.F.R. § 1306.04(a).

(I) A physician violates 21 U.S.C. § 841 (unlawful distribution of controlled substances) when: (a) the physician distributes or dispenses a controlled substance; (b) the physician acts knowingly

and intentionally; and (c) the physician's actions are not for a legitimate medical purpose in the usual course of his or her professional medical practice or fall outside the usual course of professional practice. <u>United States v. Moore</u>, 423 U.S. 122, 96 S. Ct. 335, 340-347 (1975); <u>United States v. Singh</u>, 54 F.3d 1182, 1186 (4th Cir. 1995).

9. The standard operating procedures used by the physicians and staff at the clinic for prescribing controlled substances to its patients were as follows:

(A) The clinic averaged 150 patients per day but on busy days that number could easily increase to 300 to 400 patients per day. Typically the money generated from the first week of the month paid all salaries and overhead expenses and the remaining three weeks' income was pure profit.

(B) Approximately 70% of patients seen at the clinic paid in cash, paying $450 for a first time patient and $150 for established patients. Generally, the clinic only accepted insurance from individuals involved in Kentucky due to "P.I.P.", a Kentucky based private insurance program which guaranteed the clinic the sum of $10,000 per patient. Patients were transferred to the Aquatic Rehab Center until the $10,000 was exhausted. The patient then became a cash patient, returning to the clinic on a monthly basis.

(C) Dr. Hoover was known by clinic staff and patients to prescribe pain medication "to anyone." As a result, her prescribing

practices generated the largest income for the clinic. According to clinic staff, Dr. Hoover used poor documentation when prescribing medications, and nurses and clinic staff had to document charts to make them appear in proper form in the event they were searched by law enforcement. Staff and medical records reveal that the number of patients whom Hoover allegedly saw on a daily basis were so excessive that it would be virtually impossible for any person to see or examine that number of people in a given day. Likewise, the number of prescriptions being "written" on a daily basis was so great that the staff was physically unable to write them all and, at the direction of office and medical staff, resorted to faxing "lists" of prescriptions to pharmacies to keep up with the demand. Medical and office staff at the clinic also utilized the DEA registration numbers of physicians who were not physically present at the clinic on the days their DEA registration numbers were used. At one point, Dr. Hoover insisted that the DEA registration numbers of one or more other physicians be used, instead of hers, because of the volume of prescriptions that were being issued under her DEA registration number.

(D) In January 2006, one of the physicians associated with the clinic (Dr. Donald Kiser) was arrested on state charges relating to his prescribing practices. Certain medical and office staff at the clinic enlisted Camile Helsel, one of clinic's nurse practitioners, to take over ownership of the clinic from its current owner and

7

staff physician, Dr. William F. Ryckman. This change in ownership allegedly came about because of the pending state criminal charges against Dr. Kiser and the fear that the clinic and its "owner" would be coming under greater scrutiny.

(E) As a result, the clinic's name was changed from Williamson Wellness Center to Mountain Medical Care Clinic, LLC, and Helsel's name was listed in the records of the West Virginia Secretary of State's Office as the new owner. Helsel received $28,000 per month as compensation as the "owner" but then was required to "pay" the "previous owner" the sum of $25,000 per month for five years, yielding little if any financial benefit to her.

(F) As "owner," Helsel had no control over the clinic's finances. Office Manager Myra Miller and one other clinic employee handled all the money and made any necessary bank deposits.

(G) In or about February 2009, ownership of the clinic was abruptly switched back into the name of Dr. Ryckman, without Helsel's prior knowledge or involvement, and the clinic remained in Dr. Ryckman's name and under his ownership from that date until the warrants were executed in March 2010.

10. Prescription records of the West Virginia Board of Pharmacy, for the period December 2002 through January 25, 2010, reveal that Dr. Katherine Hoover was the number one prescriber of controlled substances in West Virginia, based upon the number of prescriptions filled under her DEA registration number as reported

by pharmacies in West Virginia. Her numbers far exceeded those of the two major hospitals in Charleston, West Virginia, and at least one of the major university hospitals in West Virginia, for the same time period. Since December 2002, there have been 355,132 prescriptions for controlled substances issued under her DEA number. This figure does not include Dr. Hoover's controlled substance prescriptions filled in Kentucky, which is very close to her Williamson, West Virginia office.

11. The West Virginia Board of Pharmacy's database reveals that in 2009, Dr. Hoover had 30,472 unique patient scripts. ("Unique patient scripts" means the number of individuals who filled controlled substance prescriptions under that physician's DEA registration number). Dr. J. Victorio Teleron, Jr., who worked at the clinic from 2008 to 2010, had 12,205 unique patients scripts filled under his DEA number in 2009. Dr. Ryckman, who at various times was the owner of the clinic as well as staff physician, had 1,176 prescriptions filled under his DEA number. Using the unique patients data described above for Dr. Hoover, Dr. Ryckman and Dr. Teleron, and using the percentage of 70% provided by a clinic employee as the percentage of patients who paid in cash, and who paid at least $150 per visit, the clinic had total revenue intake in 2009 alone of $4,604,565 in cash. This figure would be substantially higher if the total for new patients who paid $450 per visit was included, as well as other income from the Kentucky

9

residents. Inasmuch as the medical clinic had a significant number of patients who were merely showing up on a monthly or other regular basis, paying $150 and receiving their prescriptions without undergoing a medical exam, all revenues derived by clinic are traceable to violations of 21 U.S.C. §§ 841(a)(1), 843(b) and 846.

12. Clinic staff reported that Dr. Hoover was paid $4,000 per week. Because that salary figure was lower than the salaries of other physicians at the clinic, clinic staff suspected that Hoover was being compensated in other ways, especially in light of her extensive role in the operation of the clinic.

13. In 2009, West Virginia wage reports for the clinic for the second and third quarters do not show wages being paid to Dr. Hoover. However, bank records from another WesBanco account belonging to Hoover reveal that Hoover was receiving additional monies on a regular basis from Dr. Ryckman, ranging in amounts of $2,500 to $5,000.

14. Hoover's passbook savings account with Wesbanco contained $27,671.50, more or less, at the time the seizure warrant was executed on March 2, 2010. Inasmuch as Hoover's primary if not sole source of income since at least 2004 was from her employment as a staff physician with the clinic, and since other known sources of legitimate income received by Hoover or her husband were deposited into one or more other bank accounts belonging to them, it is alleged that the proceeds which were on deposit in the Wesbanco

Passbook Savings Account No. XXXXXX3002 constitute moneys furnished or intended to be furnished in exchange for a controlled substance, or proceeds traceable to such an exchange, and therefore are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States prays that process of warrant <u>in rem</u> issue for the arrest of the defendant currency; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States for disposition according to law; and that the United States be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

UNITED STATES OF AMERICA
By Counsel

R. BOOTH GOODWIN II
United States Attorney

By: s/Betty A. Pullin
Betty A. Pullin, WV Bar Number: 5590
Attorney for the United States
United States Attorney's Office
300 Virginia Street, East, Room 4000
Charleston, West Virginia 25301
Telephone: (304) 345-2200
Fax: (304) 347-5104
Email: betty.pullin@usdoj.gov

## **VERIFICATION**

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, TO-WIT:

I, James F. Lafferty II, Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury as provided by 28 U.S.C. § 1746, the following:

That the foregoing Complaint for Forfeiture <u>in rem</u> is based upon reports and information I have gathered and which have been provided to me by various law enforcement personnel, and that everything contained therein is true and correct to the best of my knowledge and belief, except where stated to be upon information and belief, in which case I believe it to be true.

Executed on February 11, 2011.

*/s/ James F. Lafferty II*
JAMES F. LAFFERTY II

Taken, subscribed and sworn to before me this 11th day of February, 2011.

OFFICIAL SEAL
Notary Public, State Of West Virginia
RHONDA SWARTZ
P.O. Box 436
Nettie, WV 26681
My Commission Expires December 26, 2020

*Rhonda Swartz*
Notary Public

My commission expires on  12-26-2020  .