UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA,

          Plaintiff,

v.                              CIVIL ACTION NO. 2:11-cv-0101

$27,671.50, MORE OR LESS,
IN UNITED STATES CURRENCY,

          Defendant.

(Katherine Anne Hoover, and
John F. Tomasic;
No pending federal criminal charges)

MEMORANDUM OF LAW IN SUPPORT OF
<u>UNITED STATES RESPONSE TO MOTION TO DISMISS</u>

I.    <u>Procedural History of the Case</u>

    A.    The defendant currency was seized by agents of the FBI on March 2, 2010, pursuant to a federal seizure warrant issued by United States Magistrate Judge Mary E. Stanley, in Case No. 2:10-mj-0029. (<u>See</u>, paragraph 2 of the Verified Complaint of Forfeiture). Issuance of the warrant was based upon a probable cause determination by Magistrate Judge Stanley that the monies on deposit in Wesbanco Account No. XXXXXX3002 constituted proceeds of controlled substance violations and were, therefore, subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

    B.    The FBI initiated administrative forfeiture proceedings against the currency on or about April 14, 2010, when notice letters were first mailed out to Wesbanco Bank, Katherine Hoover

and John Tomasic. Separate notice letters were sent by certified mail to Katherine Hoover and John Tomasic at their residence at RR 2, Box 203, Lost Creek, West Virginia, 26385, and by certified mail to Katherine Hoover at the residence used by her when working at the clinic: 110 West Second Avenue, Williamson, West Virginia, 25661. All letters to Ms. Hoover and Mr. Tomasic were returned to sender, "unclaimed unable to forward." See, "Govt's Exhibit A," paragraphs 3(a) through (d), and accompanying "Exhibits A through D."

  C. On May 13, 2010, the FBI emailed notice of the seizure to Katherine Hoover at the following email address: stomasic@aol.com. By letter dated May 15, 2010, Katherine Hoover acknowledged receipt of the email. In her letter to the FBI, Ms. Hoover stated that she was unable to download the attached PDF files but would consult someone more knowledgeable in computers, presumably to assist her in downloading the files. See, "Govt's Exhibit A," paragraph 3(e) and accompanying "Exhibit E."

  D. At no time subsequent to Ms. Hoover's May 15 letter did Ms. Hoover inform the FBI that she was still unable to download the PDF files, that is, the Notice of forfeiture, which was emailed to her by the FBI on May 13. Although Ms. Hoover stated in her May 15 letter that her husband was in Florida on "urgent business,"[2] at no time did Ms. Hoover inform the FBI of the actual physical

---

[2] See, Exhibit E to "Govt's Exhibit A."

whereabouts of her or her husband so that the FBI could serve them at that location.

  E. On September 9, 2010, and in an apparent effort to be overly fair, the FBI sent Notice letters to Katherine Hoover at the address of the medical clinic in Williamson, that is, 35 W. 3rd Avenue, Williamson, West Virginia, 25661, and at an address in the Bahamas which was being utilized by her (and John Tomasic) at that time in other miscellaneous court proceedings,³ that is, in care of Norman Gay, M.D., 247 West Bay Street, Nassau, N. P., Bahamas. Also on this date, the FBI sent a Notice letter to John Tomasic at P. O. Box 214, Glenville, West Virginia, 26351. The Notice letters sent to Hoover in Williamson and to Tomasic in Glenville were returned to sender "unclaimed unable to forward." The Notice letter sent to Hoover in the Bahamas was received and signed for by Katherine Hoover on September 21, 2010. See, "Govt Exhibit A," paragraphs 3(f) through (h), and accompanying "Exhibits F, G and H."

  F. The FBI's additional efforts to serve Tomasic and Hoover on September 30 and October 12, 2010, at addresses found for them in Florida were unsuccessful. See, "Govt's Exhibit A," paragraphs 3(i) and (j), and accompanying Exhibits I and J.

---

³Magistrate Case Nos. 2:10-mj-0029, 0032, 0033, 0035 and 0037.

G.   In addition to the numerous efforts made by the FBI to serve Hoover and Tomasic, the FBI also published a legal notice of the seizure and intended forfeiture of the currency in the <u>Wall Street Journal</u>, a newspaper of general circulation, on April 30, May 7 and May 14, 2010.  <u>See</u>, "Govt's Exhibit A," paragraph 4 and accompanying Exhibit K.

H.   All Notice letters sent to Hoover and Tomasic, as well as the legal advertisement, provided written notice of the seizure and explained a claimant's right to file a claim of ownership to contest the forfeiture action in court.  The same Notice letters and legal advertisement also stated the deadline by which claims must be filed and the penalty for failing to file a claim by the deadline.  Copies of the Notice letters and the legal advertisement are attached as exhibits to "Govt's Exhibit A."

I.   On November 15, 2010, Katherine Hoover filed a claim with the FBI, using the address: c/o Norman Gay, M.D., 247 West Bay Streeet, N-3222, Nassau, N. P., Bahamas.  The claim was immediately referred by the FBI to the United States Attorney's Office on November 17, 2010, requesting that a judicial forfeiture action be commenced. <u>See</u>, "Govt's Exhibit A," paragraph 6, and accompanying Exhibit L.

J. On February 11, 2011, the United States initiated this judicial forfeiture action by filing the Verified Complaint within 90 days from the date of the claim and in compliance with 18 U.S.C. § 983(a)(3)(A). See, Docket #1.

II. The Motion to Dismiss Should be Denied
<u>Since the Forfeiture Action was Timely Filed.</u>

A. <u>Notice in the Underlying Administrative Forfeiture Proceeding Comported with Due Process.</u>

The United States concurs that the government is required to send notice of a nonjudicial (i.e., administrative) forfeiture proceeding to interested parties within 60 days of the date of seizure.[4] 18 U.S.C. § 983(a)(1)(A)(i). If the government does not send notice to the person from whom the property was seized within the time required by 18 U.S.C. § 983(a)(1)(A), and no extension of time is granted, the government shall return the property to that person <u>without</u> <u>prejudice</u> to the right of the government to commence a forfeiture proceeding at a later time. 18 U.S.C. § 983(a)(1)(F).

To satisfy "due process," notice must be "reasonably calculated" to apprise interested parties of the pendency of the action. <u>Dusenberry v. United States</u>, 534 U.S. 161, 168, 122 S. Ct.

---

[4]The time period is extended to 90 days if the seizure was initially made by a state or local law enforcement agency who then turns the seizure over to a federal law enforcement agency for forfeiture purposes. 18 U.S.C. § 983(a)(1)(A)(iv). Since the seizure in this case occurred by a federal and not a state agency, the 90-day deadline does not apply in this case.

5

694, 700 (2002) (adopting the Mullane standard).[5] Under federal forfeiture laws, notice must be published for three successive weeks and sent in a manner to achieve proper notice as soon as practicable. 19 U.S.C. § 1607 (incorporated into Title 21 forfeitures by 21 U.S.C. § 881(d)) and 18 U.S.C. § 983(a)(1)(A)(i). Although the method of sending notice must be reasonably calculated to provide actual notice to the potential claimant, the government is not required to prove that the claimant actually received the notice. Id., 534 U.S. at 169, 122 S. Ct. at 700-01; and Valderrama v. United States, 417 F.3d 1189, 1197 (11th Cir. 2005).

If notice is returned undeliverable, the government has an obligation to take additional steps to send notice to a property owner if it is aware that its first attempt to send notice by certified mail has miscarried, but the additional steps the government must take are not onerous; simply re-sending the notice by regular mail may be sufficient. Jones v. Flowers, 547 U.S. 220, 234, 126 S. Ct. 1708, 1718-19 (2006). See, United States v. Robinson, 434 F.3d 357, 367 (5th Cir. 2005) (FBI's two attempts to re-send notice through the mail to the claimant at the addresses he gave at the time of the seizure, and to other addresses in the FBI's database, were adequate even though all three sets of notices were returned undelivered); VanHorn v. DEA, 677 F. Supp.2d 1290,

---

[5] Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S. Ct. 652 (1950).

1311, at *8 (M.D. Fla. 2009) (government's duty under <u>Jones v. Flowers</u> when notice sent by certified mail is unclaimed will vary from case to case; simply checking databases for additional addresses was sufficient where claimant resided at the address to which the certified notices were sent and had actual knowledge of the seizure); <u>Brown v. United States</u>, 208 F. Supp. 2d 403, 406-07 (S.D. N.Y. 2002) (notice mailed to residence where claimant's wife and children lived was adequate under <u>Dusenberry</u>, even though claimant himself had been deported to Jamaica).

The government reasonably complies with the 60-day requirement for commencing an administrative forfeiture by sending notice - albeit to the wrong person at the wrong address - within the 60 days, and then sending notice to right person at the right address - albeit after the 60 days has expired - as soon as it has realized its error. <u>United States v. $4,629.00 in U.S. Currency</u>, 359 F. Supp. 2d 504, 508 (W.D. Va. 2005).

Regardless of whether or not written notice of the forfeiture proceeding has been provided, if the claimant has "actual notice" of the forfeiture proceeding then due process is satisfied. <u>Nunley v. Dept. of Justice</u>, 425 F.3d 1132, 1139 (8th Cir. 2005)(prisoner who had actual knowledge of administrative forfeiture cannot complain that the government failed to comply with <u>Dusenberry</u>); <u>Whiting v. United States</u>, 231 F.3d 70, 74 (1st Cir. 2000) (discussion of civil forfeiture in defendant's presence at his

arraignment provided actual notice even if defendant did not receive notice mailed to his prison address); United States v. $140,000 in U.S. Currency, 2007 WL 2261650, at *4 n. 13 (E.D. N.Y. 2007) (legislative history of CAFRA suggests that if claimant had actual notice of the seizure, he would have no grounds to complain about untimely notice under section 983(a)(1)(A)); DEA v. One 1987 Jeep Wrangler, etc., 972 F.2d 472, 482 (2nd Cir. 1992) (where claimant had actual knowledge of the seizure, government's failure to later publish notice of the forfeiture did not violate due process); and Pimental v. DEA, 99 F. Supp.2d 420, 428 n. 6 (S.D. N.Y. 2000) (claimant cannot complain that notice was sent to wrong address if he had actual knowledge of the seizure).

Even in cases where the federal law enforcement agency failed to serve the claimant within 60 days of the seizure date, courts have allowed the government to commence a civil forfeiture action in federal court without first returning the property to the claimant. See, United States v. $448,163.10 in U.S. Currency, 2007 WL 4178508, at *3 (D. Conn. 2007) (if the government misses the 60-day deadline, it may nevertheless file a civil judicial forfeiture complaint without first having to return the property to the person from whom it was seized). Accord, United States v. $114,031.00 in U.S. Currency, 2007 WL 2904154, at *3 (S.D. Fla. 2007), aff'd 284 F. Appx. 754 (11th Cir. 2008) (section 983(a)(1)(F) does not require the government to return the property before it files a civil

forfeiture complaint, and even if it did, it would not require the government to return drug proceeds because such proceeds are "contraband"). See also, Salmo v. United States, 2006 WL 2975503, at *3 (E.D. Mich. 2006) and Manjarrez v. United States, 2002 WL 31870533, at *2 (N.D. Ill. 2002), both of which hold that the government's failure to send notice of an administrative forfeiture proceeding within the 60-day period prescribed by 18 U.S.C. § 983(a)(1)(A) does not bar the government from commencing a civil judicial forfeiture action against the same property without first returning the property to the claimant).

In the case at bar, the FBI went to heroic efforts to try to timely notice Katherine Hoover and John Tomasic of the pending administrative forfeiture proceeding against the defendant currency at all possible known addresses for them, as proven by the Affidavit of FBI Paralegal Specialist Joseph Fields attached to and incorporated into the United States response as "Govt's Exhibit A." Obviously, somehow these attempts became known to Katherine Hoover on or about May 13, 2010, as evidenced by the email communication between her and the FBI and her follow-up letter to the FBI acknowledging its receipt. See, Exhibit E "Govt's Exhibit A." Accordingly, as of May 15, 2010, and well within the 60 days for sending notice, Katherine Hoover had actual notice that the FBI was attempting to administratively forfeit the defendant property. Although she advised the FBI that she was unable to open the

9

attachment, which was the Notice of Forfeiture, she indicated in her letter that she would consult someone more knowledgeable in computers, presumably to assist her in downloading the file. See, Exhibit E to "Govt's Exhibit A." At no time subsequent to that correspondence did she notify the FBI that she was still unable to open the attachment nor did she provide the FBI with an address to which the FBI could send her and her husband a hard copy of the Notice. See, paragraph 8 of "Govt's Exhibit A." Although Hoover (and presumably her husband John Tomasic) had actual notice of the administrative forfeiture proceeding as early as May 15, 2010, neither of them filed any claims with the FBI in response to that actual notice.

Thereafter on or about September 9, 2010, and in what could best be described as an effort to be overly fair to Hoover and Tomasic, the FBI attempted to serve them at other addresses, including the Bahamas address being used by Hoover at that time in other court proceedings in this district.[6] Hoover filed a claim

---

[6]The FBI's service of Hoover and Tomasic on or about September 9, 2010, in the administrative forfeiture action involving the $27,671.50 coincided with the date of filing of a civil forfeiture complaint on other currency seized from Hoover (that is, United States v. $88,029.08, Civil Action No. 2:10-1087, filed September 10, 2010). Hoover was using the Bahamas address in other actions in which she was filing pleadings around that same time. See, footnote 3, infra. Accordingly, the United States used the Bahamas address to serve her in Civil Action No. 2:10-1087 and, at the same time, the FBI used the same address in an effort once again to provide Hoover and/or Tomasic with notice of the pending administrative forfeiture against the $27,671.50 in U.S. Currency.

10

with the FBI on November 15, 2010, using the Bahamas address. "Govt's Exhibit A" at paragraph 6, and accompanying Exhibit L. Her filing the claim with the FBI resulted in the FBI ceasing its administrative forfeiture process involving the defendant currency and referring the seizure to the United States for purposes of filing this judicial action.

The FBI began sending notices to Katherine Hoover and John Tomasic as soon as possible after initiating the administrative forfeiture and such notices were sent to numerous possible addresses that the FBI found for Hoover and Tomasic. When those notices were returned to sender, unclaimed and unable to forward, the FBI sent additional notices out to other possible addresses for Hoover and Tomasic, despite Hoover having actual notice of the forfeiture proceeding on or about May 13, 2010. Furthermore, the FBI published a legal notice of forfeiture in a newspaper of general circulation.

Based on the legal authority more fully set forth in this memorandum of law, due process does not mandate that the FBI relentlessly pursue serving notice until it can prove that notice was actually received by the intended recipient. It is sufficient that the FBI made additional attempts to serve Hoover and Tomasic at other possible addresses they were able to find after the initial attempts were returned undeliverable. Additionally, the fact that notice was served on Hoover at the Bahamas address, an

addressed used by both her and Tomasic for service in other cases in this district, and that legal authority cited in this memorandum of law supports notice being mailed to family members,[7] the FBI went above and beyond the due process requirements of <u>Dusenberry</u> to provide notice of the forfeiture to Tomasic and Hoover.

It is immaterial that the FBI finally served written notice on Hoover after the 60 days had expired. The FBI had made numerous efforts during the initial 60 days to serve her, and she in fact had actual notice of the forfeiture during that time. Nevertheless, the FBI should not be faulted for making additional attempts to provide written notice after the 60 days had expired where its numerous prior attempts were unsuccessful. <u>See</u>, <u>United States v. $4,629.00 in U.S. Currency</u>, 359 F. Supp. 2d 504, 508 (W.D. Va. 2005) (cited infra at page 7). It was this extra effort by the FBI that provided Hoover with an additional opportunity to file a claim, even though she had actual notice in May 2010 and should have filed the claim at that time.

Based on the foregoing, the FBI clearly satisfied due process requirements in providing notice to Katherine Hoover and John Tomasic of the pending administrative forfeiture involving the $27,671.50 more or less in United States currency.

---

[7]<u>See</u>, <u>Brown v. United States</u>, 208 F. Supp. 2d 403, 406-07 (S.D. N.Y. 2002) (notice mailed to residence where claimant's wife and children lived was adequate under <u>Dusenberry</u>, even though claimant himself had been deported to Jamaica).

B.  This Civil <u>In Rem</u> Action was Timely Filed Within
    <u>90 Days of the Date of Filing of the Administrative Claim</u>

On November 15, 2010, Katherine Hoover filed a claim with the FBI in the pending administrative forfeiture proceeding involving the defendant currency. See, "Govt's Exhibit A" at paragraph 6, and accompanying Exhibit L. Pursuant to 18 U.S.C. § 983(a)(3)(A), the government must file a complaint for forfeiture within 90 days after the claim has been filed "in the manner set forth in the Supplemental Rules for Certain Admiralty & Maritime Claims" or return the property pending the filing of the complaint. In this case, the actual 90-day deadline for filing this <u>in rem</u> action was February 13, 2011. Since that date fell on a weekend, the true deadline for filing this forfeiture action was Monday, February 14, 2011. Rule 6(a)(1)(C), Federal Rules of Civil Procedure.

On February 11, 2011, and within 90 days from the date Hoover filed her claim with the FBI, the United States filed this <u>in rem</u> action in accordance with the Supplemental Admiralty & Maritime Rules. Docket #1. Accordingly, this civil forfeiture action was timely filed.

II. This Court has Subject Matter Jurisdiction
    <u>Over this Forfeiture Proceeding.</u>

This court has subject matter jurisdiction over this forfeiture proceeding as well as the alleged criminal activity giving rise to forfeiture of the defendant currency.

13

It is a violation of 21 U.S.C. § 841(a)(1) for an individual to knowingly and intentionally manufacture, distribute and dispense, or possess with intent to manufacture, distribute and dispense, a controlled substance. With regard to "scheduled" controlled substances, a person found guilty of violating 21 U.S.C. § 841(a)(1) with regard to Schedule I, II, III or IV controlled substances can be sentenced to a term of imprisonment not to exceed 5 years (Schedule IV substances), 10 years (Schedule III substances) or 20 years (Schedule I and II substances), unless death or serious bodily injury occurs in which case the terms of imprisonment increase, and fines start at $250,000, for each violation. See, 21 U.S.C. § 841(b)(1)(C), (b)(1)(E) and (b)(2).

The United States Supreme Court has held that a physician violates 21 U.S.C. § 841(a)(1) and, therefore, can be criminally prosecuted, when the physician's activities fall outside the usual course of professional practice, that is, when his or her prescription writing practices and other conduct amount to the physician essentially being a "pill-pusher." See, United States v. Moore, 423 U.S. 122, 96 S. Ct. 335 (1975).

When a physician has violated 21 U.S.C. § 841(a)(1) as referenced above, any proceeds derived by the physician or the clinic with which he or she is associated may be forfeited to the United States in a civil forfeiture proceeding brought pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 983.

14

These bases for forfeiture are alleged in paragraphs 1 and 8 of the Verified Complaint filed by the United States in this case.

The district court has original jurisdiction over all civil actions commenced by the United States, pursuant to 28 U.S.C. § 1345, and over civil forfeiture actions such as this one, pursuant to 28 U.S.C. § 1355. The pending case is a civil forfeiture action commenced by the United States. Clearly, this court has subject matter jurisdiction over this proceeding and Ms. Hoover's and Mr. Tomasic's allegations to the contrary have no legal basis.

III. The Deputy Clerk Properly Signed and
     Issued the Warrant of Arrest In Rem.

Rule G(3)(b)(i), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, provides:

**Judicial Authorization and Process.**
. . .
**(b) Other Property; Arrest Warrant.** If the defendant is not real property:

> (i) the clerk <u>must</u> issue a warrant to arrest the property if it is in the government's possession, custody, or control;

The Verified Complaint alleges in paragraph 3 that the defendant currency is in the custody of the government. The Verified Complaint further alleges that the government will seek the issuance of the Arrest Warrant by the clerk, pursuant to Rule G(3)(b)(i). <u>See</u>, paragraph 6 of the Verified Complaint. Rule

15

G(3)(b)(i) clearly states that the clerk must issue the warrant in this circumstance.

When the deputy clerk signed and issued the Warrant of Arrest in rem, it was in accordance with Rule G(3)(b)(i). Ms. Quigley was simply fulfilling her responsibilities as an officer of the court and within the mandate of federal law. She did not violate any federal law nor commit any fraud on the court, as Hoover and Tomasic have alleged. The allegations that she is involved in a conspiracy to extort money from Hoover, Tomasic and other alleged victims are completely ridiculous and lacking any factual support whatsoever. These allegations are a blatant attempt by Hoover and Tomasic to harass, intimidate and scandalize a completely innocent person who was merely fulfilling her job duties. These false and slanderous allegations are also in direct violation of Rule 11(b)(1), Federal Rules of Civil Procedure, and should not be tolerated by the Court.

## CONCLUSION

For the foregoing reasons, and for those stated in the United States response filed simultaneously herewith, the United States respectfully requests the court to deny the motion to dismiss since the FBI's efforts to provide notice to Ms. Hoover and Mr. Tomasic complied with due process and this civil forfeiture action was timely filed.

        Respectfully submitted,

        UNITED STATES OF AMERICA
        By Counsel

        R. BOOTH GOODWIN II
        United States Attorney

By:   s/Betty A. Pullin
        Betty A. Pullin, WV Bar Number: 5590
        Attorney for the United States
        United States Attorney's Office
        300 Virginia Street, East, Room 4000
        Charleston, West Virginia 25301
        Telephone: (304) 345-2200
        Fax: (304) 347-5440
        Email: betty.pullin@usdoj.gov